IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

CHARLESTON DIVISION

MICHELLE M. DANIELS, et al.,

        Plaintiffs,

v.                        CIVIL ACTION NO.  2:23-cv-00820

MINGO COUNTY COMMISSION, et al.,

        Defendants.

**MEMORANDUM OPINION AND ORDER**

Pending before the Court is Defendants Jonathan Jewell's and Joshua Farrell's motion to dismiss. (ECF No. 8.) For the reasons more fully explained below, the motion is **GRANTED**.

### I.     BACKGROUND

This matter arises from a state-level prosecution that ended in dismissal. Plaintiffs Robert Daniels, Sr., and Michelle Daniels ("Plaintiffs") were, at all times relevant herein, a married couple living in Mingo County, West Virginia. (ECF No. at 2, ¶ ¶ 4–5.) Defendant Jonathan Jewell ("Defendant Jewell") was Mingo County's elected prosecutor, (*id.* at 2–3, ¶ 7), and Defendant Joshua Farrell ("Defendant Farrell") was his assistant prosecutor, (*id.* at 3, ¶ 8).

The facts are simple.[1] On the evening of January 4, 2022, Plaintiffs' adult son had allegedly committed a felony offense and was running from the police. Plaintiffs found their son walking along the road and picked him up. (ECF No. 1 at 3, ¶ 11.) A Mingo County Deputy

---

[1] If any reader would like a full recitation of the tragic facts giving rise to this case, please see *Daniels v. Mingo County Commission*, 2:22-cv-00247, 2023 WL 7706778 (S.D. W. Va. Nov. 15, 2023).

Sheriff soon spotted the family and pulled them over. (*Id.* at 3–4, ¶ 12.) However, instead of arresting Plaintiffs' son, the officer shot and killed him. (*Id.* at 4, ¶¶ 14–15.)

Plaintiffs were taken into custody and transported to the local police station. (*Id.* at 5–6, ¶ 18.) While that happened, Blake Sipple, another Mingo County Deputy Sheriff on the scene, contacted Defendant Farrell and "advised him what was going on." (*Id.*) Defendant Farrell told Sipple to charge Plaintiffs as accessories after the fact. (*Id.* at 4–6, ¶¶ 16, 18.) Sipple followed his orders, and Plaintiffs spent the next two days in the regional jail before posting bond. (*Id.* at 4–5, ¶ 16.) However, West Virginia's accessory after the fact statute specifically excludes parents from being accessories after the fact to their children's felony offenses. W. Va. Code § 61-11-6(a). This meant Plaintiffs were statutorily immune from the crime for which they had been arrested. Someone at the prosecutor's office—either Defendant Jewell or Defendant Farrell—later realized this and dismissed Plaintiffs' charges. (*See* ECF No. 1 at 6, ¶ 19.)

This suit followed. Plaintiffs filed their complaint in this Court on December 29, 2023. (ECF No. 1.) They sued Defendant Jewell, Defendant Farrell, John Doe I–X, the Mingo County Commission, and John Doe Officers/Deputies of the Mingo County Sheriff's Department (the latter two have since been voluntarily dismissed). (*Id.*; *see also* ECF No. 7.) Plaintiffs' complaint alleges a Fourth Amendment claim for unlawful seizures of Plaintiffs, a *Monell*[2] claim (which has since been dismissed (*see* ECF No. 7)), and a slew of state-law tort claims. (ECF No. 1 at 6–11, ¶¶ 21–40.) As far as relief goes, Plaintiffs seek compensatory and punitive damages, pre- and post-judgment interest thereon, attorney's fees and costs, and any other relief this Court deems appropriate. (*Id.* at 12, ¶ 44.)

---

[2] *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658 (1978).

Defendant Jewell and Defendant Farrell moved to dismiss on February 19, 2024. (ECF No. 8.) Plaintiffs filed a joint response in opposition on March 4, 2024, (ECF No. 11), to which Defendant Jewell and Farrell replied on March 6, 2024, (ECF No. 12). The matter is ripe for adjudication.

## II.   LEGAL STANDARD

A motion to dismiss for failure to state a claim upon which relief may be granted tests the legal sufficiency of a civil complaint. Fed. R. Civ. P. 12(b)(6). A plaintiff must allege sufficient facts, which, if proven, would entitle him to relief under a cognizable legal claim. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 554–55 (2007). A case should be dismissed if, viewing the well-pleaded factual allegations in the complaint as true and in the light most favorable to the plaintiff, the complaint does not contain "enough facts to state a claim to relief that is plausible on its face." *Id.* at 570. In applying this standard, a court must utilize a two-pronged approach. First, it must separate the legal conclusions in the complaint from the factual allegations. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Second, assuming the truth of only the factual allegations, the court must determine whether the plaintiff's complaint permits a reasonable inference that "the defendant is liable for the misconduct alleged." *Id.* Well-pleaded factual allegations are required; labels, conclusions, and a "formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555; *see also King v. Rubenstein*, 825 F.3d 206, 214 (4th Cir. 2016) ("Bare legal conclusions 'are not entitled to the assumption of truth' and are insufficient to state a claim." (quoting *Iqbal*, 556 U.S. at 679)). A plaintiff's "[f]actual allegations must be enough to raise a right to relief above the speculative level," thereby "nudg[ing] [the] claims across the line from conceivable to plausible." *Twombly*, 550 U.S. at 555, 570.

### III.  DISCUSSION

Defendant Jewell and Defendant Farrell argue that Plaintiffs' claims against them must be dismissed because, as prosecutors, they enjoy absolute immunity from claims stemming from their prosecutorial duties.[3] (ECF No. 9 at 6–8.) Because Plaintiffs bring both federal and state-law claims, and Defendant Jewell and Defendant Farrell seek immunity from each of them, the Court must analyze their immunity under both federal and state law. The Court first addresses federal prosecutorial immunity. Once complete, the Court considers prosecutorial immunity under West Virginia law.

A. Fourth Amendment

Plaintiffs Fourth Amendment claims are brought via 42 U.S.C. § 1983. That statute "imposes liability on anyone who, under color of state law, deprives a person of any rights, privileges, or immunities secured by the Constitution and laws." *Blessing v. Freestone*, 520 U.S. 329, 340 (1997) (internal quotation marks omitted). "Section 1983, on its face[,] admits of no defense of official immunity." *Buckley v. Fitzsimmons*, 509 U.S. 259, 268 (1993). Despite this, the Supreme Court has read § 1983 to incorporate those immunities available at common law— including prosecutorial immunity. *Imbler v. Pachtman*, 424 U.S. 409, 427 (1976); *see also Burns v. Reed*, 500 U.S. 478, 484 (1991) (recognizing that "§ 1983 was not meant to abolish wholesale all common-law immunities" (internal quotation marks omitted) (quoting *Pierson v. Ray*, 386 U.S. 547, 554 (1967))).

---

[3] They also argue that all of Plaintiffs' claims are barred by the doctrine of accord and satisfaction, since Plaintiffs reached a settlement with the Mingo County Commission in their prior suit. (ECF No. 9 at 5–6.) Meritorious as this argument may be, the Court cannot address it at this time because doing so would require the Court to analyze facts outside the complaint. *Tauss v. Midland States Bank*, No. 5:16-cv-00168, 2017 WL 3741980, at *9 (W.D.N.C. Aug. 30, 2017).

4

Prosecutorial immunity is a form of absolute immunity that "protects the vigorous and fearless performance of the prosecutor's duty that is so essential to a fair, impartial criminal justice system." *Nero v. Mosby*, 890 F.3d 106, 117 (4th Cir. 2018) (internal quotation marks omitted) (quoting *Imbler*, 424 U.S. at 427–28). "As representatives of the people, prosecutors have a responsibility to enforce the laws evenhandedly and to exercise independent judgment in seeking justice." *Id.* "The public trust of the prosecutor's office would suffer if he were constrained in making every decision by the consequences in terms of his own potential liability in a suit for damages." *Imbler*, 424 U.S. at 424–25. After all, "[n]o matter how conscientious a prosecutor may be, a defendant often will transform his resentment at being prosecuted into the ascription of improper and malicious actions to the State's advocate." *Nero*, 890 F.3d at 117 (internal quotation marks omitted) (quoting *Imbler*, 424 U.S. at 425). Without absolute immunity, "this threat of retaliatory litigation would" flip the administration of justice on its head, as "prosecutors [would begin] bring[ing] charges based not on merit but on the social or political capital of prospective defendants." *Id.* (citing *Imbler*, 424 U.S. at 438 (White, J., concurring in the judgment)). To be sure, prosecutorial immunity "is not grounded in any special esteem for those who perform [prosecutorial] functions, and certainly not from a desire to shield abuses of [the prosecutor's] office." *Kalina v. Fletcher*, 522 U.S. 118, 127 (1997) (internal quotation marks omitted) (quoting *Malley v. Briggs*, 475 U.S. 335, 342 (1986)). This strand of absolute immunity instead flows from a recognition that "any lesser degree of immunity could impair the judicial process itself." *Id.*

Since prosecutorial "immunity safeguards the process, not the person, it extends only to [those] actions 'intimately associated with the judicial phase of the criminal process.'" *Nero*, 890 F.3d at 117–18 (quoting *Imbler*, 424 U.S. at 430–31). When determining whether a particular

5

action is "intimately associated with the judicial" process, courts employ a functional analysis. *Van de Kamp v. Goldstein*, 555 U.S. 335, 342–43 (2009). That is, they analyze "'the nature of the function performed,' without regard to 'the identity of the actor who performed it,' 'the harm that the conduct may have caused,' or even 'the question whether it was lawful.'" *Nero*, 890 F.3d at 118 (quoting *Buckley*, 509 U.S. at 269).

The Supreme Court has applied this functional analysis to different prosecutorial actions over the years and, in doing so, has identified a broad spectrum of actions that are sufficiently tethered to the judicial process to warrant absolute immunity. *See, e.g.*, *Imbler*, 424 U.S. at 430. These include (1) evaluating evidence assembled by the police, *Buckley*, 509 U.S. at 273, and (2) and preparing and filing charges, *Kalina*, 522 U.S. at 130.

Particularly relevant here, the Fourth Circuit has followed this lead and held that prosecutors receive absolute immunity when they review already-gathered evidence and direct an officer to file charges. In *Nero*, an arrestee died in police custody, and authorities investigated his death. 890 F.3d at 115. The authorities presented their findings—which included a medical examiner's conclusion that the death was a homicide—to the city's lead prosecutor. *Id.* She evaluated the evidence and directed an investigator to charge the officers with manslaughter and other crimes. *Id.* at 115, 118. But the prosecutions later fell through, and the officers sued the prosecutor for malicious prosecution. *Id.* at 116. On appeal, the Fourth Circuit rejected the officers' attempt to sidestep "settled Supreme Court and [C]ircuit precedent" on prosecutorial immunity. *Id.* at 119. As the Court explained, the prosecutor's "instruction to [the investigator] to file charges against the [o]fficers [was] tantamount to a 'decision to file charges.'" *Id.* "And that decision," the Court said, enjoyed "absolute[] immun[ity]" under Supreme Court precedent.

*Id.* (citing *Kalina*, 522 U.S. at 130). As a result, the Court held that where a "plaintiff[] allege[s] that a prosecutor initiated [baseless] charges against them by . . . directing [an investigator or officer] to file [the] charges, the prosecutor is entitled to absolute immunity." *Id.* (citing *Springmen v. Williams*, 122 F.3d 211, 213–14 (4th Cir. 1997)).

      1. Defendant Farrell

*Nero* forecloses Plaintiffs' Fourth Amendment claims against Defendant Farrell. Specifically, Plaintiffs here allege that Defendant Farrell heard the evidence Sipple had gathered against them, and he then instructed Sipple to charge them as accessories after the fact. Just as the *Nero* prosecutor's "instruction to [the investigator] to file charges against the [o]fficers [was] tantamount to a 'decision to file charges,'" so, too, was Defendant Farrell's instruction that Sipple charge Plaintiffs as accessories after the fact. *Nero*, 890 F.3d at 119. It makes no difference that Sipple was the one that carried out the act; all that matters is that Defendant Farrell made the final call. *See id.*; *see also Springmen*, 122 F.3d at 213 (declining to decide a case "on the technicality of [whether] a prosecutor's signature [appeared] on a charging document" and instead analyzing whether the "police officer [who filed the charges was] implement[ing] the prosecutor's [charging] decision").

Plaintiffs refute this conclusion. They say that Defendant Farrell should not receive absolute immunity because he only offered Sipple legal advice as to whether there was probable cause to charge Plaintiffs. (ECF No. 11 at 7–9.) This argument fails for two reasons. First, Plaintiffs never made this factual allegation. To the contrary, their complaint alleges—indeed, emphasizes—that Defendant Farrell directed Sipple to charge them, and that Sipple was merely

following Defendant Farrell's orders when he did so.[4]  (ECF No. 1 at 5–6, ¶18.)  Second, even if Plaintiffs had made that factual allegation, it would not change the result.  The Fourth Circuit has held, in a published opinion, that prosecutors enjoy absolute immunity when they advise police officers whether probable cause exists to charge a prospective defendant and the officer then acts on that advice and files charges.  *Springmen*, 122 F.3d at 212–14.  That is the exact fact pattern Plaintiffs seem to believe they alleged, and it is one that also receives absolute immunity.

    2. Defendant Jewell

Plaintiffs' Fourth Amendment claim against Defendant Jewell also fails, though for a slightly different reason.  In their complaint, Plaintiffs only made two factual allegations against Defendant Jewell: (1) that he holds a law degree and is licensed to practice law in West Virginia; and (2) that he dismissed their criminal cases.  (ECF No. 1 at 5, 6, ¶¶ 17, 19.)  Neither of these allegations support even the slightest inference that Defendant Jewell played any role in Plaintiffs being improperly arrested and charged, which is the gravamen of their illegal seizure claim.  As such, the Court finds that Plaintiffs have failed to state a Fourth Amendment claim against Defendant Jewell.

B. State-law claims

Plaintiffs' state-law claims fail for identical reasons.  As it relates to Defendant Farrell, West Virginia has adopted the federal approach to prosecutorial immunity.  *State ex rel. W. Va. Att'y-Gen., Medicaid Fraud Control Unit v. Ballard*, 895 S.E.2d 159, 179–81 (W. Va. 2023);

---

[4] In fairness to Plaintiffs, Sipple's deposition testimony from their prior lawsuit (attached to their current complaint) could be read as saying Defendant Farrell told him whether he thought probable cause existed and that Sipple was free to do what he thought best with that legal opinion.  (ECF No. 1-1 at 5:12–24.)  Plaintiffs, however, did not read Sipple's testimony that way when drafting their complaint.  In fact, they deliberately avoiding drawing that inference and took great pains to allege that Sipple "was following the instructions of Defendant Farrell when he filed those specific charges against Plaintiffs."  (ECF No. 1 at 5–6, ¶ 18.)

*Launi v. Hampshire Cnty. Prosecuting Att'ys. Off.*, 895 S.E.2d 117, 122–26 (W. Va. 2023). This means any prosecutorial function that receives absolute immunity under federal law will also receive absolute immunity under West Virginia law. *See Launi*, 895 S.E.2d at 122–26. Such is the case here. Defendant Farrell's decision to charge Plaintiffs—an act that receives absolute immunity under federal law—forms the basis for each of Plaintiffs' state-law claims. Thus, he likewise enjoys absolute immunity from those claims under state law. As for Defendant Jewell, Plaintiffs failed to allege any wrongful conduct on his part, so the Court finds that they failed to allege any state-law claim against him.

### IV. CONCLUSION

For the foregoing reasons, Defendants' motion to dismiss is **GRANTED**.

**IT IS SO ORDERED.**

The Court **DIRECTS** the Clerk to send a copy of this Order to counsel of record and any unrepresented party.

ENTER: June 26, 2024

THOMAS E. JOHNSTON, CHIEF JUDGE